UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____   Docket No. 14-cv-4446
MARIA GOUMAKOS,

                                Plaintiff,

                                                   **AMENDED COMPLAINT**
                                                   **and**
                                                   **JURY DEMAND**

                -against-
MERCYFIRST, INC., and
JOANNE CORDARO

                                Defendants.
_____

    Plaintiff MARIA GOUMAKOS, by her attorneys, LAW OFFICE OF ALENA SHAUTSOVA as for her Complaint against Defendant MERCYFIRST, INC. (hereinafter "MERCYFIRST"), and Defendant JOANNE CORDARO (hereinafter "Cordaro"), collectively "Defendants," respectfully sets forth and alleges that:

**NATURE OF THE CASE**

1. This is an action for equitable relief and for money damages on behalf of the Plaintiff MARIA GOUMAKOS (hereinafter referred to as "Ms. Goumakos"), a female Defendants' employee who was harassed at work due to her national origin, age, and discrimination complaints.

2. Ms. Goumakos was and still is respectively deprived of her Constitutional and Statutory Rights as a result of the Defendants' practices of creating hostile work environment and disparate treatment, continuing violations of Ms. Goumakos' rights and engaging in retaliatory actions.

3. This is also an action to recover money damages against Defendants whose actions have caused and continue to cause Ms. Goumakos emotional distress, depression, anxiety, and a loss of life enjoyment. As a result of the discriminatory and retaliatory practices of Defendants herein, Ms. Goumakos has been injured in that she suffers from chest pains, stomach pain, depression, distraction, panic attacks, and insomnia, emotional distress, anxiety, stress, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life. As a result of prolonged, severe hostile environment, Ms. Goumakos at one point became suicidal.

4. Plaintiff has no adequate remedy at law to address the violations described above if relief is not granted, then the rights secured to her by Title VII , New York State and New York City Human Rights laws and FMLA will be denied to her.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the Title VII and under 28 U.S.C. §§1331 and 1343, because the current lawsuit arises under the laws of the United States and is brought to recover damages for depravation of equal rights, the New York State Human Rights Law, N.Y. Executive Law §§ 290 et seq. ("State HRL"), as well as damages under the Age Discrimination in Employment Act, 29 USC§ 621, et. seq.

6. This Court has subject matter jurisdiction over the claims under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. because the current lawsuit is also filed to recover damages for violation of Ms. Goumakos' rights under FMLA.

7. This Court has supplemental subject matter jurisdiction over the State and City HRL claims under 28 U.S.C.§ 1367, because they arise from a common nucleus of operative

facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Ms. Goumakos has complied fully with any and all prerequisites to jurisdiction in this Court under Title VII, and this matter is being filed within ninety days of Plaintiff's receipt of right to sue letter on or about May 30, 2014.

9. The unlawful employment practices, violations of Ms. Goumakos' Civil Rights, and tortuous acts complained of herein were committed within the Eastern District of New York.

## PARTIES

10. Plaintiff MARIA GOUMAKOS is a sixty four years old female of Greek origin, who is residing in Brooklyn, New York.

11. At all relevant times, Ms. Goumakos was an "eligible employee" pursuant to 29 U.S.C. § 2611(2).

12. Defendant MERCYFIRST, INC. is a non-for-profit 501(c) New York corporation, with the principal place of business at 525 Convent Road, Syosset, New York 11791.

13. Defendant MERCYFIRST maintains an office at 6301 12th Ave, Brooklyn, NY.

14. At all relevant times, Ms. Goumakos has been employed at Brooklyn location.

15. At all relevant times, Defendant MERCYFIRST has been employing more than fifty persons.

16. Defendant MERCYFIRST is an "employer" within the Federal Medical Leave of Absence Act meaning.

17. Upon information and belief, Defendant JOANNE CORDARO was and still is the Senior Vice President of Defendant MERCYFIRST.

18. At all relevant times, Ms. Goumakos was and still is qualified for the position she was holding and her performance was satisfactory.

## PROCEDURAL HISTORY

19. Ms. Goumakos filed her first EEOC complaint against Defendant MERCYFIRST back in March, 2008.

20. Upon information and belief, she received a right to sue letter but did not file a lawsuit because she was under the impression she had to pay attorney's fees and could not afford an attorney.

21. After Ms. Goumakos' first complaint, the supervisor she was complaining about was in fact disciplined, but the harassment she was complaining about did not stop and continued up until the time Ms. Goumakos was fired, in addition, the company has been systematically retaliating against Ms. Goumakos and finally fired her.

22. After years of turmoil, Ms. Goumakos filed her second EEOC complaint on May 29, 2013.

23. May 2013 complaint was dismissed on July 15, 2013. However, already in October, 2013, Ms. Goumakos was fired.

24. In November 2013, Ms. Goumakos filed a new EEOC complaint alleging discrimination and retaliation based on disability and later amending the charge adding allegations of age, and national origin/ethnicity discrimination and retaliation.

25. In May, 2014 Ms. Goumakos received Right to Sue letter dated May 27, 2014 and now is filing her complaint within 90 days of the receipt of the said letter.

## FACTS

### MS. GOUMAKOS' EMPLOYMENT HISTORY WITH DEFENDANT MERCYFIRST

## **DISCRIMINATION**

26. Ms. Goumakos was first hired to work for Defendant MERCYFIRST in April, 1999 as an administrative assistant.

27. From 2006 Ms. Goumakos has been a victim of discrimination and retaliation which ultimately resulted in her termination.

28. The harassment started with the insulting remarks and comments towards Ms. Goumakos. The employees of Defendant Mercyfirst sometimes would say that they could not understand Ms. Goumakos due to her accident, and asked her if she could "speak English." Once, during the work break, one of the employees asked Ms. Goumakos: "Are you Greek?" to what she replied "Yes", and then the person responded: "Then you should go back to Greece."

29. First, Ms. Goumakos thought that this behavior towards her was based the fact that she was new, and with the time, maybe, it would become better. As she just started the job, she did not want to be fired right away.

30. With time, however, Ms. Goumakos started to speak up and asked her co-workers to stop making fun of they way she was pronouncing words. It became Ms. Goumasko' daily routine to respond to her supervisors and co-workers: "I know how to speak English. I just have an accent… I live here now, I am a US citizen…"

31. Interestingly enough, not one supervisor at Mercyfirst ever made a comment or undertook any action to prevent this daily harassment. It soon became apparent to Ms. Goumakos that she was the company's scapegoat, and if she did not like it there, she "could leave…"

32. With the time, the harassment spread and went beyond offensive comments. Ms. Goumakos' supervisors started treating her like a person of second class, as if she did not understand what she was doing, was unprofessional and could not understand English!

33. Naturally, Ms. Goumakos decided to fight for herself and started complaining about the constant harassment and hostile work environment, in hopes that the higher- ups in the company would listen to her and abort these unlawful actions.

**COMPLAINTS REGARDING MS. EVELYN VALENTINE AND SENIOR MANAGEMENT**

34. In or about 2006, Ms. Goumakos became a victim of severe harassment by her supervisor, Evelyn Valentine and senior management.

35. Amongst many offensive and humiliating things Ms. Valentine did to Ms. Goumakos were accusations of Ms. Goumakos not doing her work; making defective entries into the electronic system, stating that Ms. Goumakos was "stupid'; accusing Ms. Goumakos of being the only one "who takes breaks."

36. In addition, Ms. Evelyn Valentin was mocking Ms. Goumakos' Greek accent; was harassing her by yelling at her, making up accusations of defective work; instigating other workers to be hostile to Ms. Goumakos and treating Ms. Goumakos as an inferior due to Ms. Goumakos' Greek background.

37. The above described, prompted Ms. Goumakos to file a complaint with corporate Defendant's Human Resources on or about May 29, 2006. However, instead of investigation of the alleged violation of Ms. Goumakos' rights, she was once again accused of defective job performance.

6

38. The senior management staff: Ms. Harlean Dennis and Ms. Jackeline McKelvey did not undertake any steps in instructing Ms. Valentine to stop unlawful discrimination.

39. These actions were occurring on a daily basis. Ms. Goumakos became so stressed, she would fear to come to work, because she knew that a new scandal, with new accusations would start.

40. Ms. Goumakos complained to senior management about her supervisor Ms. Valentine. Ms. Goumakos met with Ms. McKelvley and discussed the situation on several occasions.

41. Ms. Goumakos explained that Ms. Valentine was singling her out due to her age and being Greek, that Ms. Valtenint was yelling at Ms. Goumakos, instigating other workers to be hostile to Ms. Goumakos and treating Ms. Goumakos as an inferior due to Ms. Goumakos's Greek background.

42. Also, Ms. Valentine was using her supervisory position to make Ms. Goumakos' life miserable and forcing her to quit: she was unjustly disciplining Ms. Goumakos.

43. The complaint did not yield any results, apart from retaliation.

44. It became apparent that the company and its supervisors wanted Ms. Goumakos to leave. They did not want to address any issues of harassment, but rather tried to blame Ms. Goumakos of insubordination and even made up a story that she, Ms. Goumakos, whose father fought in World War II against fascism, was anti-Semitic!

45. Ms. Goumakos was outraged at these last allegations. The company "created" a report after incident where they said, in 2002, Ms. Goumakos made an anti-Semitic remark. The report was authored by Harlean Dennis. However, 2008 was the first time Ms. Goumakos saw that so called "report" as a part of response by Defendants to her EEOC

complaint, and of course, this "report" was nothing else but a part of systematic persecution and harassment of Ms. Goumakos. Ms. Goumakos has never made any anti-Semitic comments, and was never disciplined for anything like that.

46. In addition, Ms. Goumakos was harassed due to her age and disability: she was told that she was too old to remember things; and suggestions that Ms. Goumakos' age was affecting her ability to do her work.

47. On or about March 6, 2008, Ms. Goumakos filed another complaint with the Human Resources, and on March 21, 2008 she filed her first EEOC complaint.

48. On or about April 2, 2008 Ms. Goumakos sent an email to Joanne Cordaro asking for help in connection with "hostile environment" and complaining that "everything is the same."

49. On April 4, 2008 Ms. Valentin was disciplined by the Defendant MERCYFIRST, however the harassment of Ms. Goumakos continued: she had to move to two different positions since her EEOC filing; her health condition was widely discussed by the employees; all Ms. Goumakos' complaints were met with the "you are going to be fired" comment from Human Resources.

50. The harassment continued. In October, 2008, after one of the "meetings" with Defendant Cardaro, Ms. Goumakos was taken to an emergency room. Obviously, a regular employee- employer meeting, should not be putting an employee into a hospital bed.

**FURTHER HOSTILE ENVIRONMENT AND RETALIATION**

51. In June, 2009 Defendant CORDARO offered Ms. Goumakos to either quit or accept a different position with Defendant MERCYFIRST. Ms. Goumakos had no choice but to accept new position and had to re-learn new duties and functions of the new position.

52. Upon information and belief, Ms. Goumakos' old position, even though she was told it was terminated, was given to Ms. Prisinzano by Defendant CORDARO.

**HOSTILE ENVIRONMENT 2011**

53. Ms. Goumakos' complaints were just a nuisance for the company who did not want to deal with the fact that Plaintiff became an outcast at her job.

54. In or about 2011, a co-worker, publically used foul language to address Ms. Goumakos. Ms. Goumakos' complained to a supervisor about it, but all the supervisor said was that worker "just let the team out."

55. It was very humiliating for Ms. Goumakos. She felt that due to her history of complaints and constant poor treatment she received from her supervisors, she was powerless.

56. In 2011, the company transferred Ms. Goumakos to a new department. Despite request for training for a new position, Ms. Goumakos was not trained. She had to learn everything from her fellow workers. Obviously, the company hoped that Ms. Goumakos would just give up and quit.

**HOSTILE ENVIRONMENT AND HARASSMENT BY DIANE KOPITOWSKY**

57. Further, with time, Ms. Goumakos has been seen by her superiors as a scapegoat, whose complaints and objections were not taken seriously. Even though the company allegedly has been investigating each Ms. Goumakos' complaint, the overall attitude and hostile environment did not change.

58. In or about 2012 Ms. Goumakos' supervisor Diane Kopitowsky has subjected Ms. Goumakos to further harassment. Very often, Ms. Kopitowsky would say to Ms. Goumakos that she did not understand her due to her accent. On a daily basis, every conversation with Ms. Goumakos would be filled with making faces and gestures as if

Ms. Goumakos did not understand English, and Ms. Kopitwosky was "explaining" her what she was saying.

59. Obviously, Ms. Kopitowsky was discriminating against Ms. Goumakos due to her being Greek.

60. Further, Ms. Kopitwosky would require Ms. Goumakos to get her lunch every day. Ms. Kopitwosky would eat it at her desk and then ask Ms. Goumakos to clean after her. The co-workers made offensive comments regarding Ms. Goumakos' "new duties" and would often say "Hey, Maria, would you bring my lunch as well?" "Hey, Maria, your boss is here, bring her lunch!"

61. Further, Ms. Kopitowosky would ask Ms. Goumakos to bring files to her desk, and when Ms. Goumakos would bring the files, she would act all annoyed, and tell her" Why did you bring the files? Now, take them back!"

62. Ms. Kopitwosky's daily routine was to tell Ms. Goumakous to do her duties, and blame Ms. Goumakous for Ms. Kopitowsky's mistakes.

63. No matter what Ms. Goumakous did, she could never do it right: Ms. Goumakos was donating her money for the children, she had arranged for books donations, and she would make sure that the reports she was working on were always correct.

64. Ms. Goumakos' complaints, however, were not taken seriously by the company.

**DISCRIMINATION HOSTILE ENVIRONMENT, 2013**

65. In or about May, 2013, Ms. Goumakos was called for a meeting with Ms. Joanne Cordaro , Ms. Mary Jo, and Mary Mcclean, Mary Bingham and some human resources workers where Ms. Goumakous was reprimanded.

66. The offensive conduct of Mercyfirst supervisor was so severe that Ms. Goumakos had hard time forcing herself to come to work. She loved helping children and families, but the constant abuse, mocking, ignorance of her complaints and hostile environment made Ms. Goumakos stressed, anxious and at some point suicidal.

67. On May 29, 2013, Ms. Goumakos filed another EEOC complaint stating that she was a victim of continuous retaliation and discrimination.

68. In or about June, 2013, Ms. Goumakos' supervisor Mary Jo would harass her on a daily basis: by calling Ms. Goumakos to her office and blaming her of not booking the appointments the right way. On many occasions she would try to correct the way Ms. Goumakos' was speaking. Ms. Goumakos had to explain that she had an accent.

69. When Mary Jo would listen to Ms. Goumakos, she would make a face as if Ms. Goumakos is a little child. It was very offensive to Ms. Goumakos. To all Ms. Goumakos' objections, Mary Jo would respond that Ms. Goumakos could have found another job.

70. On or about August 1, 2013, her supervisor Mary Jo, as a part of discrimination, blamed Ms. Goumakos for mistake with appointments. Ms. Goumakous complained about harassment to Jackeline McKelvey.

71. As soon as October 28, 2013, Defendant CORDARO terminated Ms. Goumakos with the explanation that she was "insubordinate." Ms. Goumakos was not insubordinate, and her firing was a mere attempt to eliminate the need for improvement of anti-harassment practices at Defendant MERCYFIRST by firing the complainant.

72. Moreover, Ms. Goumakos learned that she was fired while she was on medical leave which she took from October 24, 2013. She informed her employer promptly about the medical condition and presented a doctor's note to that effect.

73. Nevertheless, as soon as October 28, 2013 Ms. Goumakos was fired. Ms. Goumakos never had a chance to provide complete FMLA certification to her employer.

## FIRST CAUSE OF ACTION (Discrimination, TITLE VII against Defendant MERCYFIRST)

74. Ms. Goumakos incorporates by reference all of the preceding paragraphs.

75. Title VII prohibits discrimination against employees based on national origin.

76. Title VII prohibits employers from subjecting employees to unwelcome statements or conduct that is based on place of origin and is so severe or pervasive that the individual being harassed reasonably finds the work environment to be hostile or abusive, and there is a basis for holding the employer liable.

77. Defendant MERCYFIRST's supervisors subjected Ms. Goumakos to unwelcome statements based on her being Greek. Ms. Valentin yelled at her and intimidated her causing her to be afraid of her.

78. Defendant MERCYFIRST created hostile environment that interfered with Ms. Goumakos' ability to perform her duties and caused her to be depressed and suicidal.

79. Defendant MERCYFIRST's supervisors further harassed Ms. Goumakos when accused her of making mistakes at work; spreading rumors of her failed performance; making comments as to her age and disability. Ms. Goumakos' supervisor were making fun of her accent, implying that Ms. Goumakos could not understand or speak English. They were harassing Ms. Goumakos on a daily basis.

80. Defendant CORDARO contributed to discrimination by failing to meaningfully address Ms. Goumakos' complaints and by not enforcing anti-discriminatory and anti-retaliatory policies with regard to Ms. Goumakos.

81. Defendants ' conduct constitutes unlawful discrimination and harassment in violation of Title VII.

82. Defendants' conduct constitutes a malicious, willful, and reckless violation of Ms.Goumakos' rights under Title VII.

83. As a direct and proximate result of institutional Defendants' conduct Ms. Goumakos was injured in that he suffered emotional distress, anxiety, depression, stress, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life; she has incurred and will continue to incur medical expenses for treatment by health care professionals, and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Ms. Goumakos is thereby entitled to general, and compensatory damages.

## SECOND CAUSE OF ACTION (Retaliation, Title VII against Defendant MERCYFIRST)

84. Ms. Goumakos incorporates by reference all of the preceding paragraphs.

85. Title VII prohibits employers from engaging in retaliatory practices against employees who were engaged in protected activities.

86. By objecting to superiors' comments, remarks and offensive conduct and by complaining about discrimination and retaliation, Ms. Goumakos engaged in protected activity.

87. There exist a causal connection between Ms. Goumakos' protected activities and Defendant MERCYFIRST's adverse employment actions of changing Ms. Goumakos' duties, disciplining her and firing her.

88. Defendant MERCYFIRST's conduct constitutes unlawful retaliation in violation of Title VII.

89. Defendants' conduct constitutes a malicious, willful, and reckless violation of Ms.Goumakos' rights under Title VII.

90. As a direct and proximate result of institutional Defendants' conduct Ms. Goumakos was injured in that he suffered emotional distress, anxiety, depression, stress, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life; she has incurred and will continue to incur medical expenses for treatment by health care professionals, and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Ms. Goumakos is thereby entitled to general and compensatory damages.

### THIRD CAUSE OF ACTION (STATE HRL; against ALL Defendants)

91. Ms. Goumakos incorporates by reference all of the preceding paragraphs.

92. Such conduct by Defendants constitutes unlawful discrimination, harassment, and retaliation in violation of the New York State Human Rights Law.

### FOURTH CAUSE OF ACTION (NEW YORK CITY HRL; against ALL Defendants)

93. Ms. Goumakos incorporates by reference all of the preceding paragraphs.

94. Defendant CORDARO exercises control over personnel decisions and aided and abetted the discriminatory conduct described herein

95. Such conduct by Defendants constitutes unlawful discrimination, harassment, and retaliation in violation of Title 8 of the Administrative Code of the City of New York.

### FIFTH CAUSE OF ACTION: VIOLATION OF FMLA (Against Defendant MERCYFIRST)

96. Ms. Goumakos incorporates by reference all of the preceding paragraphs.

97. Ms. Goumakos promptly informed her employer that she would require medical leave of absence and presented a doctor's note to that effect.

98. Ms. Goumakos informed and believes, and on that basis alleges, that there was an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(1), and that Ms. Goumakos was denied her entitlement to leave as prescribed in FMLA

99. Defendant MERCYFIRST, rather than providing Ms. Goumakos with the FMLA leave, fired Ms. Goumakos.

100. Defendant MERCYFIRST fired Ms. Goumakos in retaliation for taking FMLA leave.

101. Therefore, as a result of Defendant MERCYFIRST's actions, Ms. Goumakos suffered damages and is entitled to compensatory and declaratory relief under the FMLA: compensation for lost wages and benefits; attorney fees and costs, including a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action; and liquidated damages.

### SIX CAUSE OF ACTION: VIOLATION OF ADEA (Against Defendant MERCYFIRST)

102. Ms. Goumakos incorporates by reference all of the preceding paragraphs.

103. The Defendant MERCYFIRST's conduct as alleged above constitutes discrimination based on Age discrimination in violation of ADEA. The stated reasons

    for the Defendant's conduct were not the true reasons, but instead were pretext to hide

    the Defendant's discriminatory animus

WHEREFORE,

Plaintiff respectfully requests that upon trial this Court enter judgment:

a. Declaring Defendants' actions, policies, and practices violated Title VII and the State HRL; and City HRL.

b. Permanently enjoining Defendant MERCYFIRST (and its officers, agents, and successors) from engaging in actions, policies, or practices that discriminate or retaliate against any employees because of their place of origin and/or sexual orientation or that discriminate or retaliate against any employees of Mercyfirst because of their participation in this lawsuit, in Ms. Goumakos' opposition to discrimination by Mercyfirst, or in any other conduct protected by Title VII, the State HRL and City HRL.

c. Ordering appropriate equitable relief to prevent, correct, and remedy past and future discrimination against Greek employees of Mercyfirst and to prevent, correct, and remedy past and future discrimination and retaliation against all Mercyfirst's employees who engage in conduct protected by Title VII, State and City HRL.

d. Directing Mercyfirst to make Ms. Goumakos whole by providing her with back pay, reinstatement of front pay in lieu of thereof, and compensation for all lost or diminished employment-related compensation or benefits, past or future;

e. Directing Mercyfirst pay Ms. Goumakos compensatory damages for injury to her reputation, for adverse effects on her career, and for diminished earning capacity resulting from the discriminatory and retaliatory actions of Mercyfirst;

f.  Directing Mercyfirst to pay Ms. Goumakos an award of damages to be determined at the time of trial to compensate her for mental anguish, humiliation, embarrassment, and emotional distress and injury;

g.  Awarding Ms. Goumakos reasonable attorney's fees and costs, as provided Title VII, 42 U.S.C. § 1988; and FMLA;

h.  Awarding Ms. Goumakos liquidated damages under FMLA;

i.  Awarding Ms. Goumakos liquidated damaged under ADEA;

j.  Granting such additional relief as this Court deems just and proper.

JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by jury.


Dated: September 29, 2014
Brooklyn, NY

Respectfully submitted,

                                                    s/_____
                                       ALENA SHAUTSOVA (as-9641)

                                       LAW OFFICES OF
                                       ALENA SHAUTSOVA
                                       2908A Emmons Ave
                                       Brooklyn, NY 11235
                                       Tel. 917-885-2261
                                       Fax 516- 612-4087
                                       www.shautsova.com